**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA and STATE OF TEXAS, ex rel. SHATISH PATEL, M.D., HEMALATHA VIJAYNA, M.D., and WOLLEY OLADUT, M.D.,** | § § § § § | |
| *Plaintiffs*, | § § | |
| | § | **CIVIL ACTION NO. 4:17-CV-01817** |
| **V.** | § § | |
| | § | |
| **CATHOLIC HEALTH INITIATIVES, ST. LUKE'S HEALTH SYSTEM CORPORATION, ST. LUKE'S COMMUNITY DEVELOPMENT CORPORATION – SUGAR LAND, DAVID FINE, DAVID KOONTZ, and STEPHEN PICKETT,** | § § § § § § § § | |
| *Defendants*. | § | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS RELATORS' ORIGINAL COMPLAINT**

**TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT ........................................... 1

II.     FACTUAL BACKGROUND ................................................................................. 3

III.    NATURE AND STAGE OF THE PROCEEDING ...................................................... 6

IV.     ISSUE PRESENTED .......................................................................................... 6

V.      STANDARD OF REVIEW .................................................................................. 6

        A.  Rule 12(b)(6) ......................................................................................... 6

        B.  Rule 9(b) ............................................................................................... 7

VI.     APPLICABLE LAW .......................................................................................... 7

        A.  The False Claims Act ............................................................................. 7

        B.  The Federal Anti-Kickback Statute ........................................................ 8

        C.  The Stark Law ....................................................................................... 9

VII.    ARGUMENT .................................................................................................. 10

        A.  Relators' allegations concerning the rescission transactions fail to state a
            claim and do not plead fraud with particularity. .......................................... 10

            1.  The Complaint does not plausibly allege a violation of the AKS ........................ 10

                a.  The rescission transactions were not kickbacks for referrals .......................... 11

                b.  Relators failed to allege the requisite intent to break the law. ....................... 15

                c.  Relators fail to identify any referrals for services covered by Medicare
                    or Medicaid. ....................................................................................... 16

            2.  The Complaint does not plausibly allege a violation of the Stark Law. ............... 18

            3.  Relators have not established that Defendants knowingly submitted false
                claims ....................................................................................................... 20

        B.  Relators' allegations concerning the change of ownership fail to state a claim
            and do not plead fraud with particularity. .................................................. 21

            1.  The Complaint does not plead the existence of factually false claims. ............... 24

            2.  The Complaint does not plead the existence of legally false claims. ................... 26

i

a.   Relators fail to allege FCA liability under an express or implied certification theory, because Relators do not plead that Defendants falsely certified compliance with a statute, regulation, or contractual requirement. ................................................................................................ 27

b.   Relators fail to allege FCA liability under an express or implied certification theory, because Defendants did not falsely certify compliance with a material condition of payment. ......................................... 28

3.   Relators do not plead that Defendants "knowingly" submitted false claims. ....... 31

C.   The Complaint fails to state a claim against Defendants Fine, Pickett and Koontz, or to plead fraud with particularity. ............................................................. 34

VIII. CONCLUSION ................................................................................................. 35

ii

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...............................................................................6, 17, 25

*United States ex rel. Bailey v. Ector Cty. Hosp.,*
    386 F. Supp. 2d 759 (W.D. Tex. 2004)...............................................................28

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ...........................................................................6, 11, 17, 35

*United States ex rel. Bennett v. Medtronic, Inc.,*
    747 F. Supp. 2d 755 (2010) ...............................................................................22

*United States ex rel. Bledsoe v. Cmty. Health Sys. Inc.,*
    501 F.3d 493 (6th Cir. 2007) ...............................................................................7

*Campbell v. City of San Antonio,*
    43 F. 3d 973 (5th Cir. 1995) ..........................................................................6, 26

*United States ex rel. Clausen v. Lab. Corp. of Am., Inc.,*
    290 F.3d 1301 (11th Cir. 2002) .........................................................................17

*D'Agostino v. ev3, Inc.,*
    845 F.3d 1 (1st Cir. 2016).................................................................................30

*Dorsey v. Portfolio Equities, Inc.,*
    540 F. 3d 333 (5th Cir. 2008) ...........................................................................32

*Fernandez-Montes v. Allied Pilots Ass'n,*
    987 F.2d 278 (5th Cir. 1993) .............................................................................11

*In re Franklin Bank Corp. Sec. Litig.,*
    782 F. Supp. 2d 364 (S.D. Tex. 2011) ..............................................................16

*Gonzalez v. Fresenius Med. Care N. Am.,*
    689 F.3d 470 (5th Cir. 2012) ......................................................................15, 23

*United States ex rel. Graves v. ITT Educ. Servs., Inc.,*
    284 F. Supp. 2d. 487 (S.D. Tex. 2003)........................................................22, 27

*United States ex rel. Grubbs v. Kanneganti,*
    565 F.3d 180 (5th Cir. 2009) .............................................................................20

iii

*United States ex rel. Gudur v. Deloitte Consulting LLP*,
    512 F. Supp. 2d 920 (S.D. Tex. 2007) ...................................................................................29

*Hagood v. Sonoma Cty. Water Agency*,
    81 F.3d 1465 (9th Cir. 1996) ............................................................................................33

*United States ex rel. Harman v. Trinity Indus. Inc.*,
    2017 WL 4325279 (5th Cir. Sept. 29, 2017) ....................................................................30

*United States ex rel. Hebert v. Dizney*,
    295 F. App'x 717 (5th Cir. 2008) ...............................................................................20, 26

*United States ex rel. Hebert v. Dizney*,
    2008 WL 4538308 (5th Cir. Oct. 10, 2008)........................................................................7

*United States ex rel. Jamison v. McKesson Corp.*,
    649 F.3d 322 (5th Cir. 2011) ..............................................................................................2

*United States ex rel. King v. Alcon Lab., Inc.*,
    232 F.R.D. 568 (N.D. Tex. 2005) .....................................................................................26

*United States ex rel. Ligai v. ETS-Lindgren Inc.*,
    2014 WL 4649885 (S.D. Tex. Sep. 16, 2014) ..............................................................8, 23

*Locke v. City of Corpus Christi*,
    2006 WL 2670982 (S.D. Tex. Sept. 18, 2006) ...................................................................3

*United States ex rel. Morton v. A Plus Benefits, Inc.*,
    139 F. App'x 980 (10th Cir. 2005) ...................................................................................33

*United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*,
    519 F. App'x 890 (5th Cir. 2013)......................................................................................17

*United States ex rel. Nunnally v. West Calcasieu Cameron Hosp.*,
    519 F. Appx. 890 (5th Circ. 2013) ....................................................................................10

*United States ex rel. Parikh v. Citizens Med Ctr.*,
    977 F. Supp. 2d 654 (S.D. Tex. 2013) ..............................................................................29

*Patel v. St. Luke's Sugar Land P'ship, L.L.P.*,
    445 S.W.3d 413 (Tex. App. 2013)...........................................................................3, 4, 32

*United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.*,
    2017 WL 3034336 (M.D. Tenn. Jun. 22, 2017) ...............................................................30

*Riley v. St. Luke's Episcopal Hosp.*,
    252 F.3d 749 (5th Cir. 2001) ..............................................................................................2

*Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*,
620 F.3d 465 (5th Cir. 2010) ................................................................................35

*Rodriguez v. Gold & Silver Buyers, Inc.*,
2013 WL 5372529 (S.D. Tex. Sept. 24, 2013) ........................................................3

*United States ex rel Ruscher v. Omnicare, Inc., et al.*,
663 Fed. Appx. 368 (5th Cir., Oct. 28, 2016) ..........................................................9

*United States ex rel. Ruscher v. Omnicare, Inc.*,
2015 WL 5178074 (S.D. Tex. Sept. 3, 2015) ...................................................9, 14

*United States ex rel. Ruscher v. Omnicare*,
2014 WL 2618158 (S.D. Tex. June 12, 2014) .........................................7, 11, 14

*United States ex rel. S.E. Carpenters Reg. Council, v. Fulton Cnty., GA*,
2016 WL 4158392 (N.D. Ga. Aug. 5, 2016) ......................................................8, 29

*United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*,
472 F.3d 702(10th Cir. 2006) .................................................................................21

*United States ex rel. Smart v. Christus Health*,
626 F. Supp. 2d 647 (S.D. Tex. 2009) ...........................................................7, 27, 28

*Smith v. Sikorsky Aircraft Corp.*,
41 F. Supp. 3d 564, 566–67 (S.D. Tex. 2014) .......................................................13

*Sonwalkar v. St. Luke's Sugar Land Partnership, LLP*,
394 S.W.3d 186 (Tex. App. 2012)........................................................................4, 5

*United States ex rel. Stephenson v. Archer W. Contractors, L.L.C.*
548 F. App'x. 135, 139 (5th Cir. Dec. 2, 2013)......................................................7

*United States ex rel. Steury v. Cardinal Health, Inc.*,
625 F.3d 262 (5th Cir. 2010) ...............................................................................7, 8

*United States ex rel. Taylor-Vick v. Smith*,
513 F.3d 228 (5th Cir. 2008) .................................................................................31

*United States v. BNP Paribas SA*,
884 F. Supp. 2d 589 (S.D. Tex. 2012) ...................................................................33

*United States v. Caris Life Scis., Inc.*,
2013 WL 11579021 (N.D. Tex. Oct. 23, 2013) ......................................................18

*United States v. Davis*,
132 F.3d 1092 (5th Cir. 1998) .....................................................................9, 10, 15

60788400.5

*United States v. HCA Health Servs. Okla., Inc.*,
   2011 WL 4590791 (N.D. Tex. Sep. 30, 2011)................................................27

*United States v. Planned Parenthood Gulf Coast, Inc.*,
   21 F. Supp. 3d 825, 832 (S.D. Tex. 2014) ...........................................8, 21, 31, 33

*United States v. Waller*,
   2017 WL 2559092 (S.D. Tex. June 13, 2017) ........................................9

*Universal Health Servs., Inc. v. United States*,
   136 S. Ct. 1989 (2016)..................................................8, 23, 27, 29, 31, 34

*Waldman v. Fulp*,
   2016 WL 9711525 (S.D. Tex. Oct. 13, 2016).............................................23, 24

*United States ex rel. Wall v. Vista Hospice Care, Inc.*,
   778 F. Supp. 2d 709 (N.D. Tex. 2011) ...............................................28, 29

*United States ex rel. Wilkins v. United Health Grp., Inc.*,
   659 F. 3d 295 (3rd Cir. 2011) .....................................................31

*United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*,
   336 F. 3d 375 (5th Cir. 2003) .....................................................28

*United States ex rel. Williams v. McKesson Corp.*,
   2014 WL 3353247 (N.D. Tex. Jul. 9, 2014)..............................21, 22, 24, 25, 28, 29

*United States ex rel. Williams v. McKesson Provider Tech.*,
   2015 WL 13616727 (N.D. Tex. Mar. 27, 2015) ...................................7, 8, 22, 29

*United States ex rel. Woodard v. DaVita, Inc.*,
   2011 WL 13196556 (E.E. Tex. 2011).................................................24

**Statutes & Regulations**

31 U.S.C. § 3729(a)(1)(A) ................................................................7

31 U.S.C. § 3729(a)(1)(A)-(B) ...........................................................22

31 U.S.C. § 3729(b)(1) ..................................................................21

31 U.S.C. § 3729(b)(1)(A) ...............................................................31

42 U.S.C. §1320a-7b(b)(2) ................................................................8

42 U.S.C § 1320a7-b(b)(2) ...........................................................15, 16

42 U.S.C. § 1395nn(a) ...............................................................10, 18

vi

42 C.F.R. § 411.351 ............................................................................................................13

42 C.F.R. § 411.353 ............................................................................................................10

42 CFR § 411.357(f) ...........................................................................................................19

42 CFR § 411.357(f)(1)(i) ...................................................................................................19

42 CFR § 411.357(f)(1)(ii) ..................................................................................................19

42 CFR § 411.357(f)(2) .......................................................................................................19

42 CFR § 411.357(f)(3) .......................................................................................................19

**Other Authorities**

OMB No. 0938-0977, UB-04 CMS-1450 (2015) ................................................................25

Rule 9(b) ....................................................................................................... *passim*

Rule 12(b)(6) .....................................................................................1, 6, 10, 11, 17

Defendants Catholic Health Initiatives, St. Luke's Health System Corporation, St. Luke's Community Development Corporation – Sugar Land, David Fine, David Koontz, and Stephen Pickett (collectively "Defendants"), by counsel, hereby move to dismiss Shatish Patel, M.D., Hemalatha Vijayna, M.D., and Wolley Oladut, M.D.'s (collectively "Relators") Original Complaint (the "Complaint") in the above-captioned action pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).  As set forth more fully below, the Complaint should be dismissed with prejudice under Rule 12(b)(6) because it fails to state a claim upon which relief may be granted, and because the Complaint fails to plead fraud with a sufficient level of particularity, which is required by Rule 9(b) in actions under the False Claims Act.

## I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT

Relators have been engaged in litigation against all but one of the defendants, based on the same or similar allegations raised here, for more than six years.  In that underlying litigation, pending in Harris County District Court since 2011 (styled as *Patel, et al v. St. Luke's Episcopal Health Sys., et al*., Case No. 2011-24016) (the "State Court Action"), these same plaintiffs sought in excess of $60 million in damages from the Defendants based on alleged breaches of contract, breaches of fiduciary duty, fraud, conversion, and other claims stemming from a failed joint venture hospital in Sugar Land, Texas (the "Hospital").  After a three-week jury trial, the jury awarded damages totaling roughly $3 million (including attorneys' fees) in June 2015.

Though the State Court Action has not yet been reduced to a final judgment, Relators' dissatisfaction with the result has clearly boiled over, and Relators now inappropriately invoke the federal False Claims Act ("FCA") [31 U.S.C. § 3729 *et seq*.] along with its treble damages and per claim penalties to assert their repackaged claims against the Defendants.  This is merely a misguided attempt to obtain the unwarranted financial windfall they could not to achieve in the

1

State Court Action.  Not surprisingly, it took the Department of Justice ("DOJ") a mere two months to review Relators allegations and decline to intervene.  *See* Dkt. 1; Dkt. 3.[1]

After pursuing the State Court Action for more than six years, Relators now allege violations of the FCA predicated on unsupported claims of violations of the Stark Law, Anti-Kickback Statute ("AKS"), and the Texas Medicaid Fraud Prevention Act ("TMFPA").  Though Relators' Complaint includes a lengthy recitation of facts gathered during the State Court Action, these facts describe a business dispute between private parties, not a fraud scheme hatched by the Defendants to victimize federal healthcare programs.

Relators attempt to allege violations of the AKS and Stark Law stemming from a statutory offer of rescission made to physician owners in the failing partnership that owned the Hospital at the time.  But the Complaint falls short of establishing a kickback in return for Medicare or Medicaid referrals or a Stark Law violation because the rescission payments were valid remuneration paid to the physician owners for reasons wholly unrelated to inducing referrals.  Defendants sought to eliminate the very real possibility that the physician investors would file suit against the partnership based on violation of the Texas Securities Act.  And the Complaint itself espouses additional justifications for why Defendants allegedly pursued rescission (*i.e.* the desire to expand the hospital, the impediments based on a change in the law and the supposed corresponding need to jettison the physician owners).  In fact, many of Relators' allegations seek to paint the Defendants as bullies, engaged in strong-arm tactics to achieve their ultimate goal, the elimination of physician ownership in the Hospital.  Assumed as

---

[1] The Fifth Circuit has shown a healthy level of skepticism when it comes to non-intervened FCA cases. *See e.g. Riley v. St. Luke's Episcopal Hosp.,* 252 F.3d 749, 767 n.24 (5th Cir. 2001) ("cases in which the government declines to intervene are generally the meritless cases"); *United States ex rel. Jamison v. McKesson Corp.,* 649 F.3d 322, 331 (5th Cir. 2011) (the United States declined to intervene in a number of defendants' actions because they "presumably lacked merit").

2

true, these claims are antithetical to the Relators' unfounded assertion that the rescission payments violated the AKS and the Stark Law.

Relators also attempt to manufacture a violation of the FCA based on an ongoing legal dispute about the correct designation of the Hospital's ownership, and allegations around the sufficiency of the underlying process used to notify Medicare and Texas Medicaid of the change in the Hospital's ownership. This theory also fails because the Complaint does not establish either factual or legal falsity under the FCA. Relators do not explain what specifically was factually false about the claims that Defendants submitted or caused to be submitted, do not identify the specific information required or included by Defendants which was false, and do not identify even a single false claim that was actually submitted. The Complaint also does not sufficiently plead legal falsity, as Relators omit any mention of a material statute, regulation, or requirement that Defendants violated while certifying that they were in compliance. Finally, because of the State Court Action has not been reduced to a final judgment, what Relators frame as a foregone conclusion regarding the Hospital's ownership is at best a disputed legal question. That is insufficient to establish the level of scienter required under the FCA to demonstrate that the defendants "knowingly" submitted false claims.

## II.   FACTUAL BACKGROUND

Relators are disgruntled former investors in the St. Luke's Sugar Land Partnership, LLP (the "Partnership"), which was created to own and operate a hospital in Sugar Land, Texas. *Patel v. St. Luke's Sugar Land P'ship, L.L.P.*, 445 S.W.3d 413, 414–15 (Tex. App. 2013).[2] The Partnership's ownership was divided between Class A units, which were reserved for physicians,

---

[2] The Court may take judicial notice of the proceedings and records in the State Court Action. *See Rodriguez v. Gold & Silver Buyers, Inc.*, No. 4:12-CV-1831, 2013 WL 5372529, at *3 (S.D. Tex. Sept. 24, 2013); *Locke v. City of Corpus Christi*, No. CIV A 06-305, 2006 WL 2670982, at *1 (S.D. Tex. Sept. 18, 2006).

3

and Class B units, which were reserved for the Partnership's managing partner, St. Luke's Community Development Corporation – Sugar Land ("SLCDC-SL"). *Id.* SLCDC-SL was a wholly-owned subsidiary of the St. Luke's Episcopal Health System Corporation (n/k/a St. Luke's Health System Corporation) (the "System").[3] *Id.* at 415.

In soliciting physician investors in the Partnership, the System and its consultants provided potential investors with an offering memorandum containing information and financial projections regarding the anticipated operations of the Hospital. Physician investors could purchase Class A shares for $40,000 per share. Ultimately 96 physician investors purchased a total of 196 Class A shares. Relators purchased a total of 10 Class A shares. After the offerings concluded, the Hospital opened in October 2008.

From the outset, the Partnership never met its financial projections. The Partnership never had positive cash flow, and operated at a net loss. *Sonwalkar v. St. Luke's Sugar Land Partnership, LLP*, 394 S.W.3d 186, 191 (Tex. App. 2012). In April 2011, Dr. Patel, one of the Relators here, sued the Partnership for fraud, breach of fiduciary duty, and other claims based largely on his allegations that the Partnership had not financially performed as promised in the offering. *Id.* Dr. Vijayan, another Relator here, joined that suit shortly thereafter.[4]

In May 2011, the Partnership offered Class A physician investors an opportunity to rescind their purchase of Class A units under the Texas Securities Act. *Id.* Dr. Patel sought and obtained an injunction in his then-pending lawsuit to stop the rescission. Complaint ¶ 78. That injunction was ultimately dissolved, and Dr. Patel again sought an injunction to prevent the rescission for proceeding. *Id.* Ultimately, the district court considered Dr. Patel's arguments against the

---

[3] In 2013, years after plaintiffs first filed the State Court Action, Catholic Health Initiatives ("CHI") acquired the System and its various subsidiaries.

[4] The other relator, Dr. Oladut, also joined the suit later.

4

rescission, denied the request for injunctive relief, and allowed the rescission process to move forward.

In June 2011, the Partnership sent formal rescission offers to each of the 96 physician partners. *Sonwalkar,* 394 S.W.3d at 191. The rescission offer advised Class A physician investors that the Partnership "was concerned that other Class A unit holders might assert claims because the disclosures made in connection with offering those units might have been inadequate. Therefore, the letter explained, the Governing Board decided to send the 'Rescission Offer' in order to mitigate that risk of litigation." *Id.* The rescission offer allowed each physician investor the opportunity to elect to "rescind his or her purchase of Class A units in exchange for a repayment of the purchase price plus six percent statutory interest from the date of purchase." *Id.* 92 of the 96 physician investors accepted the rescission. Relators here, Drs. Patel, Vijayan, and Oladut, were among the four that did not. *Id.*

Though the rescission offer moved forward, the State Court Action continued as well. Relators ultimately brought claims against the Partnership, the System, and several related entities and individuals (including all Defendants here other than CHI). *Id.* That suit asserted various causes of action including breach of fiduciary duty, fraud, misrepresentation, and theft, among others. *Id.* After nearly four years of litigation, the State Court Action was tried to a jury over the course of three weeks. Despite seeking in excess of $60 million in damages, the jury awarded plaintiffs in the State Court Action roughly $3 million, including $1.75 million in attorneys' fees. Post-trial proceedings, including a court-ordered accounting, remain ongoing, but will soon be complete. Once those post-trial activities are complete, the Harris County Court will enter a final judgment to bring the long-running State Court Action to a close.

### III.    NATURE AND STAGE OF THE PROCEEDING

On June 11, 2017, Relators filed their Complaint under seal pursuant to the *qui tam* provision of the federal False Claims Act ("FCA").  *See* Dkt. 1.  On August 14, 2017, the United States notified the Court of its decision not to intervene in this action.  *See* Dkt. 3.  Relators then served the Defendants with the Complaint on September 12, 2017.  Defendants now move to dismiss the Complaint under Rule 12(b)(6) and Rule 9(b).

### IV.    ISSUE PRESENTED

Should Defendants' Motion to Dismiss be granted because the Complaint's allegations regarding Defendants' purported submission of false claims stemming from underlying violations of the AKS, the Stark Law, and Medicare and Texas Medicaid change of hospital ownership ("CHOW") requirements fail to state a claim as required by Rule 12(b)(6), and fail to plead fraud with particularity as required by Rule 9(b)?

### V.    STANDARD OF REVIEW

#### A.    Rule 12(b)(6)

To survive a Rule 12(b)(6) challenge, Relators must plead enough facts to state a claim to relief that is plausible on its face.  Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).  Relators' factual allegations must demonstrate more than a sheer possibility that Defendants acted unlawfully, and must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555.  Dismissal is appropriate where a complaint lacks an allegation regarding a required element necessary to obtain relief.  *Campbell v. City of San Antonio*, 43 F. 3d 973, 975 (5th Cir. 1995) (internal quotations omitted).

6

### B.    Rule 9(b)

When pleading a claim under the FCA, Rule 9(b) requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); *United States ex rel. Williams v. McKesson Provider Tech.*, No. 3:12-CV-371-B, 2015 WL 13616727, at *5-6 (N.D. Tex. Mar. 27, 2015).  Rule 9(b) "has long played [a] screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner rather than later." *United States ex rel. Ruscher v. Omnicare*, No. 4:08-cv-3396, 2014 WL 2618158, at *5 (S.D. Tex. June 12, 2014) (internal quotations omitted).  Further, Rule 9(b) is intended to provide defendants with "notice of the specific conduct with which they were charged," so that they can prepare responsive pleadings.  *United States ex rel. Bledsoe v. Cmty. Health Sys. Inc.*, 501 F.3d 493, 510 (6th Cir. 2007).

At a minimum, Rule 9(b) requires Relators to plead the "who, what, when, where, and how" of the alleged fraud.  *United States ex rel. Stephenson v. Archer W. Contractors, L.L.C.*, 13-30327, 548 F. App'x. 135, 139 (5th Cir. Dec. 2, 2013) (internal citations omitted); *see also United States ex rel. Smart v. Christus Health*, 626 F. Supp. 2d 647, 656 (S.D. Tex. 2009).   In cases alleging a long-running scheme involving many false claims, the alleged extent and complexity of a fraudulent scheme "does not excuse a failure to plead at least one false claim with the requisite specificity."  *United States ex rel. Hebert v. Dizney*, No. 07-31053, 2008 WL 4538308, at *4 (5th Cir. Oct. 10, 2008) (internal citations omitted).

## VI.    APPLICABLE LAW

### A.    The False Claims Act

The FCA imposes civil liability and treble damages on any person who "knowingly presents or causes to be presented, a false or fraudulent claim for payment or approval."  31 U.S.C. § 3729(a)(1)(A); *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 267

7

(5th Cir. 2010).   To allege a violation of the FCA, a plaintiff must plead sufficient facts to establish the presence of: (1) a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that is presented to the government or, said another way, caused the government to pay out money. *Steury*, 625 F.3d at 267; *United States ex rel. Ligai v. ETS-Lindgren Inc.*, No. H-112073, 2014 WL 4649885, at *7 (S.D. Tex. Sep. 16, 2014) (clarifying the aforementioned elements apply to Section 3729(a) claims under the FCA).   While the scienter standard under the FCA encompasses situations where a defendant acts with deliberate ignorance or reckless disregard of the truth or falsity of the information, errors, innocent mistakes, or even negligence are insufficient to meet the FCA's "knowingly" standard.   *United States v. Planned Parenthood Gulf Coast, Inc.*, 21 F. Supp. 3d 825, 832 (S.D. Tex. 2014).   Not every alleged falsehood is actionable under the FCA. *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2001 (2016) (recognizing that the FCA is not an "all-purpose antifraud statute").   Rather, only acts that are "material" to the government's payment decision will prompt liability.   *Id.*; *United States ex rel. S.E. Carpenters Reg. Council, v. Fulton Cnty., GA*, No. 1:13-cv-4071, 2016 WL 4158392, at *8 (N.D. Ga. Aug. 5, 2016) (post-*Universal Health Services, Inc.* and applying materiality to both express and implied certification theories); *United States ex rel. Williams v. McKesson Provider Tech.*, No. 3:12-CV-371-B, 2015 WL 13616727, at *4 (N.D. Tex. Mar. 27, 2015).

### B.    The Federal Anti-Kickback Statute

The Federal Anti-Kickback ("AKS") statute prohibits "knowingly and willfully solicit[ing] or receiv[ing] any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person … to refer an individual to a person for the furnishing … of any item or service for which payment may be made in whole or in part under a Federal health care program."   42 U.S.C. §1320a-7b(b)(2).

8

The requirement that an offer or payment is made "knowingly" and "willfully" is significant. It means that the offer or payment was made intentionally, and not because of mistake or accident. *See United States v. Waller*, No. H-14-171-11, 2017 WL 2559092, at *4 (S.D. Tex. June 13, 2017); *United States v. Davis*, 132 F.3d 1092, 1094 (5th Cir. 1998) (defining "willfully" to mean "'the act was committed voluntarily and purposely with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law.'" (quoting *United Satiates v. Garcia*, 762 F.2d 1222, 1224 (5th Cir. 1985))).

The AKS is not intended to prevent health care businesses from "freely engag[ing] in business practices and arrangements that encourage competition, innovation and economy." Medicare and Medicaid Programs: Fraud and Abuse OIG Anti-Kickback Provisions, 54 Fed. Reg. 3088-01, 3089, 3093 (Jan. 23, 1989). And there is a difference between showing a "bad purpose" as opposed to a "business-minded[] desire to maintain good customer relations." *United States ex rel. Ruscher v. Omnicare, Inc.,* No. 4:08-CV-3396, 2015 WL 5178074, at *23 (S.D. Tex. Sept. 3, 2015), *aff'd sub nom. United States ex rel. Ruscher v. Omnicare, Inc.,* 663 F. App'x 368 (5th Cir. 2016). Moreover, "[t]here is no AKS violation … where the defendant merely hopes or expects referrals from benefits that were designed wholly for other purposes." *See United States ex rel Ruscher v. Omnicare, Inc., et al.*, 663 Fed. Appx. 368, at 374 (5th Cir., Oct. 28, 2016) (citing *United States v. McClatchey*, 217 F.3d 823, 834 (10th Cir. 2000).

### C.    The Stark Law

The federal Physician Self-Referral Law (commonly known as the Stark Law) prohibits a "physician" who has a "financial relationship" with an entity that provides "designated health services" (DHS) from referring Medicare patients to that entity for DHS paid for by Medicare, and prohibits that entity for billing Medicare for DHS provided as a result of the forbidden

referrals, unless the financial relationship meets one of the recognized Stark Law exceptions. *See* 42 U.S.C. § 1395nn(a); 42 C.F.R. § 411.353.

## VII.   ARGUMENT

### A.   Relators' allegations concerning the rescission transactions fail to state a claim and do not plead fraud with particularity.

Relators allege that the rescission transactions violated the AKS, the Stark Law, and as a result the FCA.  Dkt. ¶¶ 144, 151.  But Relators fail to offer factual allegations to support their conclusion that the rescission transactions were kickbacks in exchange for Medicare referrals, that the rescission payments violated Stark Law, or that Defendants knowingly submitted false claims which were tainted by an underlying violation of the AKS or the Stark Law.  *See generally* Dkt. 1.  For these reasons the Complaint should be dismissed pursuant to Rules 12(b)(6) and 9(b).

#### 1.   The Complaint does not plausibly allege a violation of the AKS.

To plausibly allege a violation of the AKS, Relators must show that Defendants intentionally offered or made payments in exchange for the referral of Medicare or Medicaid services or items, and that they did so with the requisite intent to do something that the law forbids. *See United States v. Davis*, 132 F.3d 1092, 1094 (5th Cir. 1998).  When a violation of the AKS forms the basis of an FCA claim, as it is alleged here, Relators must not only state a claim under Rule 12(b)(6), but must do so with heightened particularity as required by Rule 9(b). *See United States ex rel. Nunnally v. West Calcasieu Cameron Hosp.*, 519 F. Appx. 890, 894 (5th Circ. 2013) (citing *United States ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 755, 760, 783 (2010).  This Court has explained that "[t]o allege the particulars of a scheme to offer kickbacks, Relator must sketch how it was that Defendant provided remuneration… the form of that remuneration, how and why Defendant believed that remuneration would induce new

business, and how Defendant benefitted from the remuneration." *See United States ex rel. Ruscher*, 2014 WL 2618158 at *10.

Despite their front row seats to the rescission transactions and their extensive access to Defendants' internal documents and attorney-client privileged emails through discovery in the State Court Action, Relators do not come remotely close to meeting their burden.  Relators have not sufficiently alleged that the rescission transactions were kickbacks in return for referrals, that the Defendants acted with the requisite intent under the AKS, or that a single Medicare referral resulted from the purported kickbacks.

a.      The rescission transactions were not kickbacks for referrals.

Relators fail to plead facts establishing that the rescission payments were kickbacks to induce new Medicare or Medicaid business.  The rescission offer and payments were bona fide remuneration designed not to induce or reward referrals, but instead to eliminate the very real risk that the Hospital's physician investors could bring a claim under the Texas Securities Act.  Stated differently, and as the Relators own allegations make clear, Defendants' reasons for pursuing rescission were *wholly unrelated* to referrals from the physician investors.

Relators strain to frame the rescission as a kickback by disregarding the operational realities at the Hospital and relying on their own incorrect legal conclusions.  *See* Dkt. 1 ¶ 81 ("the System understood the statutory rescission offers solely as means to pay the physician partners more than what the System deemed to be fair market value for their Class A Units"); *id.* at ¶ 88 ("the rescissions were sham transactions, used as pretexts to justify returning the physician's initial investments despite the System's resolute stand that the Class A Units were only worth $5,000.").  A Complaint littered with legal conclusions, like Relators', is precisely the type of pleading that Rule 12(b)(6) is designed to prevent.  *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993); *Bell Atl. Corp v. Twombly*, 550 U.S. 555 (2007)

11

"courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'" (quoting *Papasan v. Allian*, 478 U.S. 265, 286 (1986))).

Relators' strained view of the rescission transaction as a kickback is wrong for several reasons.  First, the Partnership had substantial risk based on the accuracy and reliability of the information it provided to physician investors about the Partnership's projected financial performance, which could have provide the basis for an action under the Texas Securities Act. *See* Dkt. 1 ¶ 68 ("[Healthcare Appraisers, Inc.] April 8, 2011 report concluded that the original financial projections for the Hospital shared with prospective physician investors overestimated revenues and underestimated salary expenses. As a result, HCAI stated that "there is some basis for the position that the assumptions underlying the original Projections were unreasonable."  At the direction of its outside legal counsel, the Partnership opted to extinguish that risk by offering the physician owners the statutorily-prescribed amount for their investments. Dkt. 1 ¶¶ 63, 69, 70.[5]  Attempting to mitigate the risk of future lawsuits by investors who held a valid claim is a legitimate, non-referral-related basis for paying remuneration to physician investors, and does not establish the type of *quid pro quo* required under the AKS.

Second, Defendants paid the physicians precisely the amounts prescribed in the Texas Securities Act by refunding the physicians initial investment, plus interest at the applicable rate. Tex. Rev. Civ. Stat. Ann. Art. 581, § 33(D)(1); Dkt. 1 ¶¶ 88-89.  The Defendants' rescission payments were dictated by Texas statute, not determined arbitrarily to reward the physician owners and induce referrals, and were therefore consistent with fair market value.[6]  Relators

---

[5] The risk to the Partnership was not hypothetical.  By the time the Partnership made the rescission offer, Dr. Patel had already sued the Partnership alleging that the Partnership had not financially performed as forecasted during the offering period.

[6] The rescission payments were fair-market-value because they were calculated based on a formula under the Texas Securities Act and every physician investor received the same amount, thus effectively operating as an arms-length transaction that did not consider any value or

offer only supposition and conclusions to attempt to allege that Defendants considered referral patterns or the volume of business generated by individual physician investors as part of the rescission process.   But if the rescission was the kickback scheme Relators now assert, Defendants would have had an incentive to compensate high-volume physicians more than those who did not refer or generate business.   That did not happen (and Relators do not allege that it did) – every physician investor was treated uniformly and consistently under the Texas Securities Act.

Third, Relators misuse Defendants' potential statute of limitations defense to try to impose affirmative duties and knowledge on Defendants.   According to Relators, the statute of limitations expired on some of the potential Texas Securities Act claims investors could have brought before Defendants made the rescission offer.   Dkt. 1 ¶ 75.   But even if some investors' claims under the Texas Securities Act may have been time barred (which is expressly denied) at the time of the rescission, Defendants could not have known at the time whether a Court would ultimately agree that the investors' claims were actually time barred.   Nothing prevented the physician investors from filing suit – Dr. Dr. Patel had already done so – and Defendants then carried the risk that the court would rule against the Partnership on its potential statute of limitations defense. *Smith v. Sikorsky Aircraft Corp.*, 41 F. Supp. 3d 564, 566–67 (S.D. Tex. 2014), *aff'd,* 623 F. App'x 156 (5th Cir. 2015) ("Defendants bear the burden to prove that the statute of limitations expired before Plaintiff filed this lawsuit.").   Given the risk of liability and

---

volume of referrals. *See* 42 C.F.R. § 411.351 (defining "fair market value" to exist "where the price or compensation has not been determined in any manner that takes into account the volume or value of anticipated or actual referrals"); OIG Special Fraud Alert, 59 Fed.Reg. 65372 (Dec. 19, 1994) ("'fair market value' must reflect an arms-length transaction which has not been adjusted to include the additional value ... attributed to the referral business between [the parties]").   Certainly each of the 96 physician investors provided a different level of referrals and generated a different amount of business for the Hospital.   If as Relators claim the true purpose of the rescission payments was to induce new referrals, it is doubtful that each doctor would have been offered the same repurchase price given their "value" to the Hospital.

13

the costs attendant to litigation, even with a potentially applicable affirmative defense, Defendants reasonably chose to extinguish any potential for future claims under the Texas Securities Act.  Again, such a decision was focused on preventing legal claims, not inducing new referrals of federal program business.

Similarly, the Complaint does not establish that the rescission payments were designed or intended to induce new Medicare or Medicaid business. *See generally* Dkt. 1; *see also Ruscher*, 2014 WL 2618158 at *10.  Relators' attempt to connect the rescission payments to referrals based on testimony from a System executive in the State Court Action that: "the purpose of the statutory rescission transactions was to maintain the System's goodwill with the physicians in the community," as well as conclusory allegations about Defendants wanting to maintain "goodwill" and "favorable standing" with physicians.  Dkt. 1 ¶¶ 81, 88-91.  As this Court has previously held, maintaining goodwill with potential customers, such as community physicians, is not a violation of the AKS. *See Ruscher*, 2015 WL 5178074, at *23 (a "business minded desire to maintain good customer relations" does not violate the AKS).  This is especially true where, as here, maintaining ties with the local physicians was critical to ensure adequate access to physicians to provide care for the Hospital's patients moving forward. Defendants may have hoped the statutory rescission process would unwind the failed Partnership without alienating the physician investors.  But there is a substantial and unfounded leap between that desire for "goodwill" and "favorable standing" and Relators' allegations of illegal kickbacks to induce Medicare and Medicaid referrals. *See Ruscher*, 663 F. App'x at  375.

Despite Relators postulating about the rescission payments being used to bolster its standing with "those it considered better referral sources" being an incentive to "grow [] referral volume," when the conclusory statements are stripped out, there are no well-pled facts

14

supporting Relators' speculation. Dkt. 1 ¶ 89.  For example, the Complaint does not allege the Defendants tracked referrals from the physician investors, analyzed the business generated by these same physicians, or discussed the potential impact on referrals of using the rescission process.  There is also no specific information about the physician investors' referral patterns before or after the rescission.  The glaring omission of any of these allegations undercuts Relators assertions about Defendants' intent in using the rescission process.  *See Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 476 (5th Cir. 2012) (upholding dismissal of FCA suit based alleged violations of the AKS where there was no change to or increase in the referrals provided by the purported recipient of the kickback).

> b.      Relators failed to allege the requisite intent to break the law.

Relators also do not offer facts showing that Defendants acted "with bad purpose either to disobey or disregard the law."  *United States v. Davis*, 132 F.3d 1092, 1094 (5th Cir. 1998) (quoting *States v. Garcia*, 762 F.2d 1222, 1224 (5th Cir. 1985)); 42 U.S.C § 1320a7-b(b)(2). Despite its length, the Complaint ultimately only establishes that Defendants made a business decision to offer the rescission payment to end the failing partnership, and went to great lengths to ensure that their actions were legal.  Dkt. 1 ¶¶ 47, 50, 51, 54, 55, 58, 59, 72, 74.  Relators' own allegations show that Defendants sought advice from their outside legal counsel and engaged an independent outside consultant, Healthcare Appraisers, Inc., to assess their options for re-purchasing the physician owners shares.  Dkt. 1 ¶¶ 68-72.  This is substantial evidence on its own that Defendants' did not have the required intent to "knowingly and willfully" violate the law.

Likewise, Relators' Complaint confirms that Defendants did not violate the AKS because it actually alleges a non-referral-based  intent for the rescission.  According to Relators, a change in the federal laws regarding physician-owned hospitals 18 months after the hospital opened

15

prevented the Partnership, as it was constructed, from succeeding.  Dkt. 1 ¶¶ 27, 30, 46, 48.

Relators allege that the new limits of federal law made the Partnership model unworkable, and

caused Defendants to evaluate options for ending the Partnership.  Dkt. 1 ¶ 48-49.  Relators then

allege that, after Defendants assessed all possible options, Defendants made the reasoned

business decision to use statutory rescission offers to end the Partnership. Dkt. 1 ¶¶ 47, 49.

Taking those allegations as true, as the Court must at this stage, requires dismissal because the

Complaint pleads a separate business rationale for the rescission that defeats the intent required

to violate the AKS.[7]

> c.    Relators fail to identify any referrals for services covered by
>        Medicare or Medicaid.

Relators have failed to sufficiently plead that the physician investors made referrals to the

Hospital for goods or services that were paid for "in whole or in part" by a federal healthcare

program, as required under the AKS.  *See* 42 U.S.C §1320a7-b(b)(2).  Relators offer only a

single, general allegation regarding referrals, alleging that "rescinded physician investors have

continued to refer patients and services – including designated health services - to the Hospital

after their rescission transactions had been consummated, resulting in SLCDC-SL submitting

claims to and receiving payment from Medicare and Medicaid programs." Dkt. 1 ¶ 86.  The only

purported support for that unfounded claim is Relators' unremarkable allegation that "[a] little

less than six years after the consummation of their rescission transactions, the following

physicians [15 out of the 48 who had rescinded] … remain active staff members and referral

sources at the Hospital, according to the results of a search for Sugar Land Hospital physicians

conducted on June 10, 2017 on the System website." Dkt. 1 ¶¶ 85, 86.

---

[7] Defendants reserve the right to deny these allegations in the event that this litigation proceeds.
For purposes of a motion under 12(b)(6), the Court must take Relators' allegations as true.  *In re
Franklin Bank Corp. Sec. Litig*., 782 F. Supp. 2d 364, 387 (S.D. Tex. 2011).  As pled, Relators'
Complaint negates the intent required to establish a violation of the AKS.

Relators vague and conclusory allegations regarding supposedly-induced referrals fail to measure up under Rule 12(b)(6), much less Rule 9(b).  For example, Relators' assertion that some of the rescinded physicians continued to be members of the Hospital's medical staff does not in any way establish that those physicians made referrals to the Hospital for care that was compensation by federal healthcare programs (or that the rescission induced them to do so).  Dkt. 1 ¶ 87.  This rank conjecture does not raise a "right to relief above the speculative level" because it asks the Court to assume without support both that improper referrals were made and that Defendants requested illegal payment from government payors.  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.,* 290 F.3d 1301, 1311 (11th Cir. 2002).   Moreover, The AKS requires Realtors to provide more than their unadorned say-so that physician investors who received rescission payments were "referral sources" for the Hospital. *See e.g.* Dkt. 1 ¶ 87; *Ashcorft v. Iqbal*, 556 U.S. 662, 678 (2009).

Relators' Complaint also suffers from an abject lack of detail regarding any purportedly illegal referrals made by the former physician investors.  Despite the rescission payments being made to 92 physicians, Relators fail to allege any specific information regarding a single referral that resulted in payment from Medicare or Medicaid.  *See generally* Dkt. 1.  For example, the Complaint does not reference: (a) the date of a supposedly illegal referral, (b) the supposedly-referred patient's name or demographic information, (c) the nature of the healthcare item or service purportedly provided, (d) that a claim for that healthcare item or service was submitted, (e) when the claim was submitted, (f) the federal healthcare program to which the claim was submitted , or (g) the date and amount of payment the Hospital supposedly received. *Id.*  As a result, Relators fail to provide any indicia that referrals were made for Medicare or Medicare services for which Defendants submitted claims. *United States ex rel. Nunnally v. W. Calcasieu*

17

*Cameron Hosp.*, 519 F. App'x 890, 894 (5th Cir. 2013) (dismissing relators claims which "fail[ed] to allege any particular details of any actual referral by a physician" to the defendant); *see also United States v. Caris Life Scis., Inc.*, No. 3:10-CV-02237-P, 2013 WL 11579021, at *12 (N.D. Tex. Oct. 23, 2013) (conclusory allegation that the physicians in question referred Medicare patients was insufficient to satisfy Rule 9(b)).

2.     The Complaint does not plausibly allege a violation of the Stark Law.

To allege a Stark Law violation, Relators must plead facts that not only show a financial relationship existed between a physician and an entity that provides designated health services, but also that the physician referred Medicare patients to that entity and that no Stark Law exceptions apply. *See* 42 U.S.C. § 1395nn(a).  This analysis mirrors that discussed above in Section VII(A)(1)(c) related to the referral of Medicare or Medicaid patients under the AKS.  As with their insufficient allegations of AKS violations and the referral of federal program beneficiaries, Relators have similarly failed to plead with any particularity that the physician investors treated Medicare patients at the Hospital, or that they referred Medicare patients to the Hospital.  *See generally* Dtk. 1.  As discussed below, Relators have not provided any details identifying a physician, patient, procedure, claim, or payment submitted in violation of the Stark Law.  This fails to state a claim for violation of the FCA, and certainly does not satisfy the heightened pleading requirements under Rule 9(b).

The Complaint also fails to establish that the rescission payments, which were legal under the Texas Securities Act, do not meet the Stark Law's exception for isolated transactions.  *See generally* Dtk. 1.  In fact, the Complaint makes a compelling case that the rescission process falls squarely within the isolated transaction exception.  Under that exception, physicians are allowed to engage in an isolated transaction with a DHS entity without violating the Stark Law if certain conditions are met.  Specifically: (1) payments must be fair market value and not based on

18

referral volume; (2) the transaction must be commercially reasonable even if no referrals are or were made; and (3) no additional transactions, except those specifically exempted from the Stark Law, can occur for six months after the isolated transaction. *See* 42 CFR § 411.357(f).

Relators' own allegations establish that the rescission met the elements of the isolated transaction exception. The rescission payments were implicitly consistent with fair market value based on the legal and financial advice received from the Partnership's outside counsel and independent consultant, and because the share value paid by Defendants' was derived from the methodology included in the Texas Securities Act. 42 CFR § 411.357(f)(1)(i). The rescission payments did not take into account any volume or value of any referrals by any of the referring physicians. The payments constituted only the return of each physician's investment plus the statutorily prescribed interest. All physicians, regardless of their referral volume, were paid according to the same statutory terms. 42 CFR § 411.357(f)(1)(ii). The rescission payments were commercially reasonable because they were statutorily mandated, and paid as directed under the Texas Securities Act without regard to any referrals. Moreover, the decision to use the rescission process was based on the very real risk of lawsuits (like the one Dr. Patel had already filed) and the Defendants' desire to eliminate that risk. 42 CFR § 411.357(f)(2).[8] And finally, the Complaint does not plead that the Hospital entered into any other transactions with the physician investors aside from those otherwise excepted from the Stark Law. 42 CFR § 411.357(f)(3). Therefore, even if the rescission payments implicated the Stark Law, and if Relators had pled the required elements to establish such a violation (which they have not), the payments meet the isolated transaction exception to Stark Law.

---

[8] Any arguments Relators could advance regarding the rescission payments not being consistent with fair market value or commercially reasonableness based on the purported expiration of the statute of limitations under the Texas Securities Act fail for the same reasons set forth above in Section VII(A)(1)(c).

3.      <u>Relators have not established that Defendants knowingly submitted false claims</u>

Relators have had access to Defendants' internal documents and emails for years through their ongoing State Court Action, and were directly involved in discussions surrounding the rescission transactions. Dkt. 1 ¶ 90.  But Relators not only fail to identify a single false claim Defendants allegedly submitted, but do not and cannot plead the presence of a fraud scheme paired with reliable indicia that claims were actually submitted.  *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009).

The Complaint fails to provide any information relating to the submission of a single, specific claim for payment to a federal healthcare program by Defendants.  *United States ex rel. Hebert v. Dizney*, 295 F. App'x 717, 723 (5th Cir. 2008) (holding that a relator must plead at least one false claim with the requisite Rule 9(b) specificity.).  For instance, Relators plead no facts addressing: (1) the date on which false claims were submitted; (2) the names of employees or departments at the Hospital that were responsible for submitting false claims; (3) the names or demographic information of patients for whom false claims were submitted; (4) the federal healthcare programs to which the Hospital submitted false claims; or (5) the reimbursement the Hospital received (or allegedly retained improperly).

Rather than alleging the particular facts and circumstances surrounding the Defendants' submission of false claims or attempting to tie those claims to underlying violations of the AKS and the Stark Law, Relators instead presuppose the submission of claims and corresponding reimbursement from federal healthcare programs.  Relators include only a conclusory and unsupported allegation regarding the supposed submission of false claims.  *See, e.g.,* Dkt. 1 ¶ 152 ("SLCDC-SL, since 2012, has regularly and consistently presented claims for payment to the government for services rendered at the Hospital and referred by physicians whose

20

investments in the Partnership were rescinded in 2011.").  This does not meet the requirements of Rule 9(b).  As courts have repeatedly held, 'Rule 9(b)'s directive that 'the circumstances constituting fraud and mistake shall be stated with particularity' does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payment must have been submitted, were likely submitted or should have been submitted to the Government.'" *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah,* 472 F.3d 702, 727(10th Cir. 2006) (quoting *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002)).

Even setting these Rule 9(b) defects aside, Relators have also failed to plead that Defendants "knowingly" submitted false claims.  31 U.S.C. § 3729(b)(1).  Where, as here, Defendants decision to use the rescission process was guided by advice received from its legal counsel and a third party consultant, it cannot be said that Defendants acted even with reckless disregard or deliberate ignorance, the FCA's lowest possible bar for scienter. *Id*.  Moreover, even if the Complaint alleged that the rescission payments violated the AKS and Stark Law, the Relators must (but have failed to) specifically plead with more than mere conclusions, that the Defendants knew this and submitted claims anyway.

**B.     Relators' allegations concerning the change of ownership fail to state a claim and do not plead fraud with particularity.**

Relators also attempt to challenge every single claim submitted by the Hospital over the course of more than five years based on alleged violations of the FCA and Texas Medicaid Fraud Prevention Act ("TMFPA")[9] stemming from the change of hospital ownership ("CHOW")

---

[9] The analysis under the TMFPA mirrors the analysis under the FCA, and the Complaint's deficiencies as to the FCA apply with equal force to Relator's TMFPA claims. *See United States ex rel. Williams v. McKesson Corp.*, No. 3:12-CV-371-B, 2014 WL 3353247, at *4 (N.D. Tex. Jul. 9, 2014) (recognizing that the language of the FCA and Texas FCA differ, yet evaluating the claims under the FCA's "well-defined legal requirements"); *United States v. Planned*

21

process which occurred following the rescission process.  According to Relators, the System and SLCDC-SL did not correctly navigate the CHOW following the rescission and the ultimate termination of the Partnership.[10]  As a result, Relators claim that Defendants made false or misleading statements to CMS and Texas Medicaid regarding the true owners of the Hospital.

The Fifth Circuit and its district courts recognize that a false claim may take two forms: (1) factually false claims or (2) legally false claims.  *United States ex rel. Williams v. McKesson Corp.*, No. 3:12-CV-371-B, 2014 WL 3353247, at *54 (N.D. Tex. Jul. 9, 2014) (citing *United States ex rel. Wall v. Vista Hospice Care, Inc.*, 778 F. Supp. 2d 709, 717-18 (N.D. Tex. 2011)).  To plead factually false claims, a realtor must show that the defendant submitted claims with an inaccurate description of goods or services provided, or requested reimbursement for goods or services that were never provided.  *United States ex rel. Williams*, 2014 WL 3353247, at *5.

There are two theories of liability that a relator may use to establish legal falsity.  First, under an express certification theory, when a party submits a claim to the government and affirmatively (but falsely) certifies compliance with a particular statute, regulation, or contractual requirement that is a material condition of payment, it results in a violation of the FCA.  *United States ex rel Williams v. McKesson Provider Tech.*, No. 3:12-CV-371-B, 2015 WL 13616727, at *4 (N.D. Tex. Mar. 27, 2015); *U.S. ex rel. Bennet*, 747 F. Supp. 2d at 765-66; *United States ex rel. Graves v. ITT Educ. Servs., Inc.*, 284 F. Supp. 2d. 487, 496-97 (S.D. Tex. 2003), *aff'd*, 111

---

*Parenthood Gulf Coast, Inc.*, 21 F. Supp. 3d 825, 830-31 (S.D. Tex. 2014) (recognizing that TMFPA contains analogous provisions prohibiting substantially the same conduct as 31 U.S.C. § 3729(a)(1)(A)-(B) and utilizing an FCA analysis collectively for FCA and TMFPA claims).  Accordingly, Defendants collectively analyze Counts Three to Six throughout this Motion to Dismiss.

[10] Importantly, the CHOW process came months after the rescission was complete, and long after Drs. Patel and Vijayan had unsuccessfully sought to prevent the rescission process altogether.  The District Court vetted the rescission, determined that it complied with the statutes, and allowed it to proceed.

22

F. App'x 296 (5th Cir. 2004).  Second, under an implied certification theory, when a defendant implicitly certifies compliance with a host of applicable statutes or regulations during the claims submission process but fails to disclose a violation of some underlying statute, regulation, or contract requirement, liability under the FCA may ensue.  *Waldman v. Fulp*, No. 7:13-CV-495, 2016 WL 9711525, at *12 (S.D. Tex. Oct. 13, 2016) (citing *Universal Health Servs. Inc. v. United States*, 136 S. Ct. 1989, 1993 (2016)).

The Supreme Court recently held that two conditions must be satisfied to establish liability for implied certifications: (1) "the claim does not merely request payment, but also makes specific representations about the goods or services provided;" and (2) "the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths."  *Universal Health Servs. Inc.*, 135 S. Ct. at 2001.

The Court should dismiss Counts Three through Six (the "CHOW Claims") under Fed. R. Civ. P. 12(b)(6) and Rule 9(b), because the Complaint fails to establish a plausible violation of the FCA or TMFPA, and Relators fail to plead fraud with the requisite level of particularity. Relators use their seventy-eight page Complaint to recount a business transaction, investment dispute, and the underlying State Court Action that ensued.  But Relators never actually plead the required elements to state a claim under the FCA in the Fifth Circuit.  *See United States ex rel. Ligai v. ETS-Lindgren Inc.*, No. H-112073, 2014 WL 4649885, at *7 (S.D. Tex. Sep. 16, 2014); *Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 475 (5th Cir. 2012).  While Relators overarching theory and the particular type of falsity alleged (legal v. factual, express v. implied) is unclear, even the most generous reading of the Complaint reveals that the CHOW Claims fall flat.

23

1.     The Complaint does not plead the existence of factually false claims.

In the few allegations actually addressing the claims submitted by the Defendants, Relators only generally allege that false claims for payment were submitted because they contained "false statements about the Hospital's owner." Dkt. 1 ¶¶ 185.   But alleged misstatements about the Hospital's ownership do not constitute the inaccurate descriptions of goods or services required to plead a factually false claim.  *See, e.g. Waldmann v. Fulp*, No. 7:13-cv-495, 2016 WL 9711525, at *6, 8-9 (S.D. Tex. Oct. 12, 2016) (finding factually falsity where claims certified procedures performed by non-physicians were performed by a physician); *United States ex rel. Woodard v. DaVita, Inc.*, No. 1:05-CV-227, 2011 WL 13196556, at *6 (E.E. Tex. 2011) (finding factual falsity where claims submitted falsely claimed that the provider incurred costs for drugs that were received without cost).

Factual falsity is therefore predicated on certification relating directly to the goods or services provided.  Here however, Relators allegations of "false statements about the Hospital's owner" have nothing to do with the goods or services for which Defendants allegedly sought reimbursement – medically necessary care provided to the Hospital's patients.  *See*, *e.g*., Dkt. 1 ¶ 85. Under circumstances like these – where a provider seeks reimbursement for the precise goods or services provided – there is no factually false claim.  *United States ex rel. Williams*, No. 3:12-CV-0371-B, 2014 WL 3353247, at *5 (N.D. Tex. July 9, 2014) (dismissing claims based on allegedly false claims where "the government is alleged to have received exactly what it paid for" (the provider's services given to Medicare or Medicaid patients)).  The government received exactly what it paid for and what was described on the submitted claims—the Hospital's services provided to Medicare or Medicaid patients.  Relators' naked assertions that Defendants submitted false claims or submitted claims with incorrect Hospital ownership

24

provide insufficient support for this Court to reasonably infer such claims are factually false.  *See Iqbal*, 556 U.S. at 678; *United States ex rel. Williams*, 2014 WL 3353247 at *5.

Even if a misstatement regarding the ownership of the Hospital could form the basis for a factually false claim, Relators' allegations contain none of the key facts necessary to plead a false claim with the requisite particularity under Rule 9(b).  Relators fail to (1) explain (in general) what statements were made by the Defendants through the claims process; (2) explain why those statements were false, and; (3) identify any specific claims on which those purportedly false statements were made.  Relators fail to even reference the applicable claims form, the CMS-1450, in their Complaint let alone plead any specifics about the contents of the form or how the information provided by the Hospital was false.  Ctrs. for Medicare & Medicaid, OMB No. 0938-0977, UB-04 CMS-1450 (2015).  Relators generally plead that "submitting . . . electronic batch claims with any false information or misrepresentation would constitute a false claim[]," and offer a conclusory statement that Defendants were required to explain the Hospital's ownership on the claim form.  Dkt. 1 ¶ 133.

Relators jump from those faulty allegations to their assertion that Defendants made "false statements about the Hospital's owner with every single electronic claim submitted."  See, e.*g., id.* ¶ 185.  But Relators do not identify any actually false statements, which could be readily found on the face of the claims, or explain how Defendants otherwise supposedly submitted false claims.  Relators' allegations are insufficient to meet Rule 9(b)'s heightened pleading standards. *See, e.g., id.* ¶ 185; *United States ex rel. Williams*, 2014 WL 3353247 at *7 (dismissing relators' claims under Rule 9(b), in part, because the complaint does not mention the contents of the bills at issue, despite providing outside information on services provided).

25

Relators generally allege that "every single claim for payment" submitted over a period of more than five years was false.  Dkt 1 ¶¶ 174-179.  But Relators do not plead the existence of a single representative false claim with any detail.  This failure to reference a representative claim, or provide any details confirming its submission, is insufficient under Rule 9(b).  *United States ex rel. Hebert*, 295 F. App'x 717, 723–24 (5th Cir. 2008) (holding that a relator must plead at least one false claim with the requisite Rule 9(b) specificity); *United States ex rel. King v. Alcon Lab., Inc.*, 232 F.R.D. 568, 572 (N.D. Tex. 2005) (granting defendant's motion to dismiss *qui tam* suit where plaintiff generally alleged scheme of false claims, but failed to identify any fraudulent claims for payment).  Relators' general allegations of false claims do not meet the heightened pleading standard applicable to FCA claims.  CHOW claims must be dismissed.

        2.      <u>The Complaint does not plead the existence of legally false claims.</u>

Relators also fail to allege the existence of "legally false" claims, either based on express or implied certifications that Defendants allegedly made.  Relators do not articulate which theory of legal falsity (express or implied certification), they rely on in the CHOW Claims to establish the Defendants' alleged violation of the FCA. Dkt.1 ¶¶ 172-213 (making various allegations, not one of which even contains a variant of the word "certify").  This in and of itself supports dismissing the CHOW Claims because this Court is not tasked with saving Relators' Complaint by conjuring up allegations to satisfy the requisite elements of legally false claims.  *See Campbell v. City of San Antonio*, 43 F. 3d 973, 975 (5th Cir. 1995 (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988)).  Though the precise nature of the allegations of legal falsity is unclear, Relators' claims fail under either approach.

a.   Relators fail to allege FCA liability under an express or implied certification theory, because Relators do not plead that Defendants falsely certified compliance with a statute, regulation, or contractual requirement.

To state a claim under the FCA and plead fraud with particularity for both the express and implied certification theories, Relators must properly plead that Defendants falsely certified compliance with a specific statute, regulation, or contractual requirement. This requires Relators to: (1) identify what the applicable statute, regulation, or requirement is, and (2) allege why Defendants conduct violated the statute, regulation or requirement. *See Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 1995 (2016) (for liability to attach, in part, the defendant must fail to disclose "noncompliance with a statutory, regulatory, or contractual requirement"); *United States v. HCA Health Servs. Okla., Inc.*, No. 3:09-CV-0992, 2011 WL 4590791, at *5 (N.D. Tex. Sep. 30, 2011). Relators fail to accomplish either task.

First, the Complaint does not specify any particular statute, regulation, or contractual requirement that Defendants allegedly certified compliance with as it relates to ownership of the Hospital or the CHOW process. Relators generally allege that Defendants certified compliance with "healthcare laws such as the Anti-Kickback Statute and the Stark Law" (Dkt. 1. ¶ 163); and in even more attenuated fashion, that Defendants generally acknowledged that future claims it submits would meet "all of CMS's requirements, including compliance with applicable healthcare laws and regulations," *Id.* ¶ 133. These general references to "laws and regulations dealing with the provision of healthcare services" are "far too general to pass Rule 9(b) muster." *United States ex rel. Smart v. Christus Health*, 626 F. Supp. 2d 647, 656-57 (S.D. Tex. 2009) (dismissing qui tam complaint alleging false certification based on general representations that services identified in annual Medicare cost reports complied with healthcare laws and regulations); *see also United States ex rel. Graves v. ITT Educ. Servs. Inc.*, 284 F. Supp. 2d 487,

27

501 (S.D. Tex. 2003) (explaining that courts recognize the distinction between general certifications of compliance versus certifications with a particular requirement, among other things).   Relators broad brush allegations also fail to allege with sufficient particularity that the certifications it claims were false were actually prerequisites for Medicare or Medicaid reimbursement.  This too falls short of what Rule 9(b) requires, and warrants dismissal.  *See Christus Health*, 626 F. Supp. 2d at 657.

Second, Relators fail to plead how Defendants violated the "healthcare laws" and "CMS requirements" with respect to information about the Hospital's ownership.   The Complaint generally describes the Hospital's CHOW after the rescission process, and the subsequent submission of information to government regulators to effectuate that change.   But Relators provide no nexus between those allegations and a supposed violation of a legal or contractual requirement.   "Without more particularity, Defendants are left without notice of how their actions are unlawful—precisely what Rule 9(b) was designed to avoid."   *United States ex rel. Williams v. McKesson Corp.*, No. 3:12-CV-0371-B, 2014 WL 3353247 at *6 (N.D. Tex. July 9, 2014).[11]

>    b.    Relators fail to allege FCA liability under an express or implied certification theory, because Defendants did not falsely certify compliance with a material condition of payment.

Even if Relators sufficiently pled that Defendants violated healthcare statutes or regulations, it is well-settled that non-compliance alone does not trigger FCA liability.  *See e.g., United States ex rel. Wall v. Vista Hospice Care, Inc.*, 778 F. Supp. 2d 709, 717-18 (N.D. Tex. 2011); *United States ex rel. Bailey v. Ector Cty. Hosp.*, 386 F. Supp. 2d 759, 764 (W.D. Tex. 2004).   The alleged noncompliance and underlying false certification must be with a <u>material</u>

---

[11] These allegations fail to state a claim for relief under a false certification theory. *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F. 3d 375, 383 (5th Cir. 2003).

law, regulation, or contractual requirement.  *Universal Health Servs., Inc.*, 136 S. Ct. 1989, 2001 (2016); *Fulton Cnty., GA*, 2016 WL 4158392, at *8 (applying materiality to both express and implied certification theories after *Universal Health Servs., Inc.*)

Realtors' inability to identify a specific requirement and reliance on certifications with "healthcare laws" and "CMS's requirements" mandates dismissal.  *See United States ex rel. Williams v. McKesson Provider Techs.*, No. 3:12-CV-371-B, 2015 WL 13616727, at *4 (N.D. Tex. Mar. 27, 2015); Dkt. 1 ¶ 132-33.  Relators cite no legal authority to show that "CMS's requirements" or "healthcare laws" are categorically material to Medicare or Medicaid payment, nor can they.  *United States ex rel. Williams v. McKesson Corp.*, No. 3-12-CV-0371-V, 2014 WL 3353247, at *6 (N.D. Tex. July 9, 2014).  Rather, courts have already held that broad-based certifications, like those that Relators plead, cannot give rise to FCA liability.  *See United States ex rel. Parikh v. Citizens Med Ctr.*, 977 F. Supp. 2d 654, 676 (S.D. Tex. 2013), *aff'd sub nom., United States ex. rel Parikh v. Brown*, 587 Fed. Appx. 123 (5th Cir. 2014); *United States ex rel. Wall v. Vista Hospice Care, Inc.*, 778 F. Supp. 2d 709, 717 (N.D. Tex. 2011); *United States ex rel. Gudur v. Deloitte Consulting LLP*, 512 F. Supp. 2d 920, 947 (S.D. Tex. 2007) ("A general statement of adherence to all regu*l*ations or statutes governing participation in a program through which federal funds are received is an insufficient basis on which to premise FCA liability.").

It would be absurd to conclude that all CMS requirements or healthcare laws generally are <u>material</u> conditions of payment.  And this position has already been rejected by the Supreme Court's ruling in *Universal Health Servs*., which warned that "[t]he materiality standard is demanding" and "rigorous" and reminder that the FCA "is not an 'all-purpose antifraud statute' or a 'vehicle for punishing garden-variety breaches of contract or regulatory violations.'" *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, at 2002-03 (2016) (quoting

*Allison Engine Co., Inc. v. United States ex rel. Sanders*, 553 U.S. 662, 672 (2008)); *see also United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.*, No. 3:12-CV-0764, 2017 WL 3034336, at *14 (M.D. Tenn. Jun. 22, 2017) (submission of CMS Form 855A and claims forms are "insufficient to establish the materiality of any particular provision of Medicare laws and regulations") *appeal filed*, No. 17-5826 (6th Cir. July 20, 2017).

The lack of materiality underlying what precious little the Relators have pled, is also confirmed because the government has continued to pay the Hospital for submitted claims, despite their knowledge of the Hospital's actions as a result of this *qui tam* lawsuit (after declining to intervene),[12] and despite significant publicly available information in the long-running State Court Action.  *See United States ex rel. Harman v. Trinity Indus. Inc.*, No. 15-41172, 2017 WL 4325279, at *13-14 (5th Cir. Sept. 29, 2017) (applying *Universal Health Services, Inc.* and further pointing out that relators filed several *qui tam* lawsuits under state FCAs and of the states involved, all but one declined to intervene in the action, and continued to purchase the product at issue); *D'Agostino v. ev3, Inc.*, 845 F.3d 1, 8 (1st Cir. 2016). Additionally, neither CMS nor Texas Medicaid is alleged to have taken any adverse action against the Hospitals' provider enrollment, and Relators do not allege that either CMS or its contractor have initiated recoupments or demanded the refund of overpayments from the Hospital.  For these reasons, Relators have failed to adequately plead that Defendants' falsely certified compliance with material statutory, regulatory, or contractual requirements.

---

[12] It is beyond implausible that the DOJ would have declined to intervene in this lawsuit if Relators' claims had any merit.  The government would certainly pursue the claim if hundreds of millions of dollars in reimbursement received from Medicare and Texas Medicaid over a period of years was improper (as the Complaint alleges).

      3.       <u>Relators do not plead that Defendants "knowingly" submitted false claims.</u>

Regardless of whether Relators' theory of liability rests on factual falsity or legal falsity, Relators also fail to plead that Defendants knowingly submitted false claims.  The FCA explains that a person or entity acts "knowingly" that person or entity: (i) has actual knowledge of information, (ii) acts in deliberate ignorance of the truth or falsity of the information, or (iii) acts in reckless disregard of the truth or falsity of the information.  31 U.S.C. § 3729(b)(1)(A).  Courts are to strictly enforce the scienter requirement, which is a "rigorous" one.  *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, at 2002.  In interpreting this requirement, the Fifth Circuit has concluded that there must be a "'guilty knowledge of a purpose on the part of [the defendant] to cheat the government'" or "knowledge of guilty intent."  *United States ex rel. Taylor-Vick v. Smith*, 513 F.3d 228, 231 (5th Cir. 2008) (quoting *United States v. Aerodex*, 469 F.2d 1003, 1007 (5th Cir. 1972)).  The FCA's definition of "knowingly" excludes liability for errors, innocent mistakes, or negligence.  *United States v. Planned Parenthood Gulf Coast, Inc.*, 21 F. Supp. 3d 825, 832 (S.D. Tex. 2014) (citing *United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 681 (5th Cir. 2003)).  In order to plead that Defendants knowingly submitted a legally false claim, Relators must plead that Defendants submitted claims that they knew, at the time they were submitted, violated a law, regulation, or contractual requirement.  *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F. 3d 295, 313 (3rd Cir. 2011).  Relators fail to properly plead that Defendants had the requisite intent, whether by submitting factually false claims or legally false claims, for several reasons.

Throughout Counts Three to Six, Relators offer only conclusory allegations that Defendants knew claims for payment submitted by SLCDC-SL from 2012 were false or fraudulent, or that false records and statements were made to the government based on the CHOW process.  *See* Dkt. 1 ¶ 174, 185-91, 198-204, 209-211.  Relators fail to support those

31

conclusory allegations with well-pled facts and the requisite particularity.  Indeed, there are no supporting allegations that explicitly speak to Defendants' intent in the actual submission of a claim to Medicare or Medicaid or in navigating the CHOW process.  This is insufficient for Relators to plead the knowing submission of a factually false claim.  *See Dorsey v. Portfolio Equities, Inc.*, 540 F. 3d 333, 339 (5th Cir. 2008) ("simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)" as relators must "set forth *specific facts* supporting an inference of fraud'" (emphasis in original) (quoting *Melder v. Morris*, 27 F. 3d 1097, 1102 (5th Cir. 1994))).

Relator's reliance on the *Patel* appellate opinion in the State Court Action to try to confer knowledge of falsity on Defendants is also misplaced.  The *Patel* opinion dealt with the propriety of an injunction regarding the Partnership's post-rescission actions. Patel v. St. Luke's Sugar Land Partnership, LLP, 445 S.W.3d 413, 414 (Texas App. – Houston [1st Dist.] 2013, *review denied*). The decision resulted in the case being remanded to the district court for further proceedings.  But the case remained at the time (and still remains) ongoing – it has not yet been reduced to a final judgment.  A final resolution of the entire State Court Action, not the interlocutory *Patel* opinion, will ultimately determine the parties' respective rights, including the appropriate view of ownership of the Hospital.  The absence of a final judgment in State Court Action on its own, offers proof of Defendants' good-faith belief that the ownership question was and is subject to a legal dispute.

Relators' general reliance on the *Patel* opinion to establish ownership falls short from a Rule 9(b) standpoint.  *See, e.g.* Dkt. 1 ¶ 174.  The *Patel* decision occurred in November 2013. Relators plead nothing about Defendants' state of mind before November 2013, meaning Relators make no allegation whatsoever as to the falsity of any claims submitted from January

2012 to November 2013.  In addition, Relators make no specific allegations of Defendants' knowledge or state of mind *after* the November 2013 *Patel* decision.  Relators offer no allegations of how the *Patel* decision caused the Defendants to supposedly knowingly violate general "healthcare laws" or "CMS's requirements."  Relators have not pled scienter with the requisite particularity for claims submitted after the *Patel* decision.  Thus, Relators fail to plead that Defendants knowingly submitted a legally false claim.

Confusion regarding the treatment of Partnership interests under Texas law does not establish the requisite intent to submit a false claim to Medicare or Medicaid.  *United States v. Planned Parenthood Gulf Coast, Inc.*, 21 F. Supp. 3d 825, 832 (S.D. Tex. 2014); *see also United States v. BNP Paribas SA*, 884 F. Supp. 2d 589, 611 (S.D. Tex. 2012) ("Innocently made faulty calculations or flawed reasoning cannot give rise to liability" and "where disputed legal issues arise from vague provisions or regulations, a contractor's decision to take advantage of a position cannot result in his filing a 'knowingly' false claim").  This Court should not be misled by Relators' attempt to couch internal communications with and among attorneys or the Defendants machinations about corporate law issues as proof that the System or Defendants knowingly deceived the government.  *See, e.g.* Dkt. 1, ¶¶ 120-29; *United States ex rel. Morton v. A Plus Benefits, Inc.*, 139 F. App'x 980, 983 (10th Cir. 2005) ("expressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false'" (quoting *United States ex rel. Roby v. The Boeing Co.,* 100 F. Supp. 2d 619, 625 (S.D. Ohio 2000))); *Hagood v. Sonoma Cty. Water Agency*, 81 F.3d 1465, 1477–78 (9th Cir. 1996) ("[t]he statutory phrase 'known to be false' does not mean 'scientifically untrue,' it means 'a lie.'") (quoting *United States ex rel. Anderson v. Northern Telecom, Inc.*, 52 F.3d 810, 815-16 (9th Cir. 1995))).  When taken as a whole, these communications allege, at worst, that there was

33

initially confusion between those identified – the attorneys, the System, and SLCDC-SL – as to the Hospital's legal ownership.   In the months after the System submitted the paperwork to CMS, the System's in-house counsel confirmed and communicated to Texas Medicaid the System's definitive position on the Hospital's ownership, which was previously communicated to CMS.  *See* Dkt. 1, at ¶ 125, 127.   As such, Relators' pleadings actually conclusively demonstrate that Defendants did not knowingly submit legally false claims during after the change of ownership process.

Finally, Relators fail to state a claim for implied certification because Relators do not plead that Defendants knowingly violated a requirement that Defendants were aware was material to the government's payment decision.   Therefore, the Complaint does not meet the requirements set forth in *Universal Health Services, Inc.*, 136 S. Ct. at 1996.  Relators' claims fail to adequately plead the scienter element of an FCA cause of action and should be dismissed.

> **C.      The Complaint fails to state a claim against Defendants Fine, Pickett and Koontz, or to plead fraud with particularity.**

Relators inappropriately name as individual defendants three former System executives – David Fine, the former President, David Koontz, the former Senior Vice President of Strategy and Business Development, and Stephen Picket, the former Chief Financial Officer.   Relators do not separately allege any specific act or omission of the individual defendants that would impose FCA liability.   Instead, Relators allege only that the individual were management employees of the corporate Defendants at the time when the Relators claim SLCDC-SL supposedly submitted false claims.   The Complaint is fails to plead the essential elements of a FCA violation as to Defendants Fine, Pickett, and Koontz, and falls well short of alleging fraud with particularity as

to these Defendants (as required by Rule 9(b)).[13]   In fact, throughout Counts Three to Five, Realtors allege that Defendants Fine, Pickett, and Koontz committed the exact same actions, merely switching out each co-Defendant's name with the next.  *Compare* Dkt. 1 ¶ 176, *with* Dkt. 1 ¶ 177, *with* Dkt. 1 ¶ 178 (Count Three); *compare* Dkt. 1 ¶ 188, *with* Dkt. 1 ¶ 189, *with* Dkt. 1 ¶ 190 (Count Four); *compare* Dkt. 1 ¶ 201, *with* Dkt. 1 ¶ 202, *with* Dkt. 1 ¶ 203 (Count Five). Relators provide no plausible basis to suggest that these individuals caused the submission of false claims.  Such general allegations cannot withstand Defendants' Motion to Dismiss.

## VIII.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Relators' Complaint with prejudice.  Relators have failed to state a plausible claim for relief as required under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), or and plead fraud with particularity as required by Fed. R. Civ. P. 9(b).  The Complaint fails to state a claim for relief or meet the heightened pleading standard despite Relators' access to the discovery process through their long-running State Court Action, including countless hours of deposition testimony and tens of thousands of emails and other documents, including privileged correspondence exclusively between or involving the Partnership's and the System's inside and outside legal counsel.  As a result, further amendment would be futile, and dismissal with prejudice under Rules 12(b)(6) and 9(b) is appropriate. *See, e.g, Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) ("The trial court acts within its discretion in denying leave to amend where the proposed amendment would be futile because it could not survive a motion to dismiss.").

---

[13] The same is true of Relators' allegations against CHI.  The Complaint merely alleges that CHI is liable because it purchased the System in 2013 and false claims were supposedly submitted after the acquisition.  The Complaint offers nothing to establish that CHI had knowledge or intent, or otherwise violated the FCA.  All claims against CHI should be dismissed.

Dated:  October 31, 2017.                    Respectfully submitted,

                                             **POLSINELLI PC**

                                             By:  */s/ Mark S. Armstrong*
                                                   P. John Brady (Attorney-In-Charge)
                                                   Missouri State Bar No. 30183
                                                   Federal ID No. 2818866
                                                   Andrew J. Ennis
                                                   Missouri State Bar No.57713
                                                   (admission pending)
                                                   900 W. 48th Place, Suite 900
                                                   Kansas City,  MO 64112
                                                   (816) 374-0515 (Direct)
                                                   (816) 817-0108 (Fax)
                                                   JBrady@polsinelli.com

                                                   Mark S. Armstrong
                                                   Texas State Bar No. 01321900
                                                   Federal ID No. 219390
                                                   1000 Louisiana Street
                                                   Fifty-Third Floor
                                                   Houston, Texas 77002
                                                   (713) 374-1660 (Direct)
                                                   (713) 374-1601 (Fax)
                                                   MArmstrong@polsinelli.com

                                                   Asher D. Funk
                                                   Illinois State Bar No. 6295022
                                                   (admission pending)
                                                   150 N. Riverside Plaza, Suite 3000
                                                   (312) 873-3635 (Direct)
                                                   (312) 602-3919 (Fax)
                                                   Afunk@polsinelli.com

                                             **ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 31st day of October, 2017, a true and correct copy of the foregoing was electronically served on counsel for all parties properly registered to receive notice via the Court's CM/ECF system.

*/s/ Mark S. Armstrong*

60788400.5